IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF JUAN BENITEZ, | § | |
| DECEASED, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:13-CV-0468-D |
| VS. | § | |
| | § | |
| SEARS, ROEBUCK AND CO., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants Sears, Roebuck and Co., Sears Holdings Corporation ("Sears Holdings"),
and Sears Logistics Services, Inc. ("Sears Logistics") (collectively, "Sears") move to compel
arbitration of plaintiffs' claims arising from the workplace-related death of their relative, a
Sears employee. For the reasons that follow, the court grants the motion.

I

Plaintiffs the Estate of Juan Benitez, Deceased, Conce Benitez ("Conce"), David
Benitez, and Glori Bella Benitez, Individually, and as Personal Representatives of the Estate
of Juan Benitez, Deceased, and on Behalf of All Wrongful Death beneficiaries, brought this
lawsuit against Sears in Texas state court, alleging several claims arising from the workplace
death of Sears employee Juan Benitez ("Juan"). Sears removed the case to this court based
on diversity of citizenship, and it now moves to compel arbitration of plaintiffs' claims.

According to Sears, Juan held the position of "General Maintenance" associate at the
time of his death, and his primary function was to maintain Sears's premises, including

changing light bulbs, grounds keeping, painting, and other similar activities.  Conce, one of Juan's children, avers that Juan also unloaded and loaded goods from trucks in the warehouse.  Conce also maintains that Juan was computer illiterate, spoke little English, could not read or write English, and attended, but did not complete, elementary school in Mexico.  Sears has a Texas Injury Benefit Plan (the "Plan") that applies to employee accidents and injuries—including deaths—that occur in the course and scope of an employee's work.  It is undisputed that Juan's electronic signature was used online to acknowledge that he had completed training that consisted of viewing an in-person PowerPoint presentation and separately watching a DVD that was available in English and Spanish.  The PowerPoint presentation and the DVD both covered the Plan and its requirements, including the mandatory arbitration clause.  Juan was also provided a hard copy of the Plan, and a Spanish interpreter was available during the training session.

The arbitration clause in the Plan states:

> The Employer hereby adopts a mandatory company policy requiring that the following claims or disputes must be submitted to final and binding arbitration[:] . . . (B) any legal or equitable claim by or with respect to a Participant for any form of physical or psychological damage, harm or death which relates to an accident . . . .  This includes all claims listed above that a Participant has now or in the future against [Sears Holdings], its officers, directors, owners, associates, representatives, agents, subsidiaries, affiliates, successors, or assigns. . . .  These provisions also apply to any claims that may be brought by [Juan's] spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns.

Ps. Ex. A at 23.[1]  The Plan also provides that the Federal Arbitration Act ("FAA"), 9 U.S.C.

§ 1 *et seq*., governs the interpretation, enforcement, and proceedings under the arbitration

provisions of the Plan.

## II

Section 2 of the FAA provides that written agreements to arbitrate controversies

arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." *Id.*  The statute

"leaves no place for the exercise of discretion by a district court, but instead mandates that

district courts *shall* direct the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,

218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3 and 4).

When adjudicating a motion to compel arbitration, the court engages in a two-step

process.  First, the court determines "whether the parties agreed to arbitrate the dispute" by

"apply[ing] the contract law of the particular state that governs the agreement." *Wash. Mut.*

*Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004); *Hadnot v. Bay, Ltd.*, 344

F.3d 474, 476 & n.2 (5th Cir. 2003) (quoting *Mitsubishi Motors Corp. v. Soler*

*ChryslerPlymouth, Inc.*, 473 U.S. 614, 626 (1985)).  "This determination involves two

considerations: (1) whether there is a valid agreement to arbitrate between the parties; and

(2) whether the dispute in question falls within the scope of that arbitration agreement." *Am.*

---

[1]The court cites the evidence this way because both parties failed to paginate their
appendixes properly.  *See* N.D. Tex. Civ. R. 7.1(i)(4).

*Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam)).  If the first step is answered in the affirmative, the court then decides, second, "'whether legal constraints external to the parties' agreement foreclosed the arbitration' of the dispute."  *Hadnot*, 344 F.3d at 476 (footnote omitted) (quoting *Mitsubishi Motors*, 473 U.S. at 628); *see also, e.g., Wash. Mut.*, 364 F.3d at 263.  The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate.  *See, e.g., In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 877 (Tex. App. 2005, no pet.).  But because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

III

Plaintiffs first contend that the FAA does not apply because Juan was a transportation worker.

The FAA "compels judicial enforcement of a wide range of written arbitration agreements."  *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 278 (5th Cir. 2007) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)).  But it provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  This provision exempts employment contracts with workers who "actually engage[] in the movement of goods in interstate commerce."  *Circuit City*, 532 U.S. at 112 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)) (noting

conclusion reached by most courts of appeals).  For example, truck drivers are considered transportation workers, *see, e.g., Harden v. Roadway Package Systems, Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001), whereas car salesmen are not transportation workers, despite dealing in goods that move in interstate commerce, *see, e.g., Tran v. Texan Lincoln Mercury, Inc.*, 2007 WL 2471616, at *5 (S.D. Tex. Aug. 29, 2007).  This exception is to be narrowly construed.  *See Hobley v. Yellow Transp., Inc.*, 2010 WL 286690, at *2 (N.D. Tex. Jan. 21, 2010) (Kinkeade, J.) (citing *Rojas v. TK Commc'n, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996)).

Sears has adduced evidence that Juan's position did not require him to engage in the movement of goods in interstate commerce.  Sears Logistics' Human Resource Manager avers that Juan held the position of "General Maintenance" associate.  His duties primarily involved maintaining Sears's premises, including changing light bulbs, grounds keeping, painting, and assisting with various other similar tasks.  She states that Juan's "job duties did not involve loading goods on to trucks or unloading goods from trucks.  His job duties did not involve any trucks or transportation vehicles used for transporting goods."  Ds. Reply Ex. E at 2.

On the other hand, Conce avers that Juan loaded and unloaded trucks in a warehouse, and, specifically, that he "drove a three-wheeled truck and/or forklift to move goods on and off trucks that were shipped and delivered to and from the warehouse[.]"  Ps. Ex. A at 1. Sears objects to this evidence, contending that it is hearsay and that Conce lacks personal knowledge of Juan's work duties.  The court agrees that Conce's affidavit fails to demonstrate personal knowledge, as Fed. R. Evid. 602 requires.  *See id.* ("A witness may

- 5 -

testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Conce's affidavit states "I have personal knowledge of the facts herein," Ps. Ex. A at 1, but it does not include factual support to show that Conce possesses such knowledge, including, for example, the source of such personal knowledge. Mere assertions that an affiant's testimony is based on personal knowledge are insufficient. *See, e.g., Amie v. El Paso Indep. Sch. Dist.*, 253 Fed. Appx. 447, 451 (5th Cir. 2007) (per curiam) (stating, in summary judgment context, that "'[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge'" (quoting *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995))). Because there is no allegation that Conce worked at Sears or otherwise observed Juan at work, Conce's testimony is likely based on hearsay. The court therefore declines to consider Conce's affidavit insofar as it describes Juan's duties as a Sears employee.[2]

Considering only the job description and affidavit from Sears's Human Resources Manager, each of which shows that Juan's job did not involve loading and unloading goods that were shipped in interstate commerce, the court finds that he was not a transportation worker and, accordingly, that the FAA applies.

---

[2]In plaintiffs' state court petition, they allege that Juan was operating a powered industrial truck at Sears's warehouse at the time of the accident. According to plaintiffs, Juan crashed into a rail, was thrown from the truck, hit his head on the cement floor, was knocked unconscious, and remained in a coma 23 days before his death. But the petition (as is normally the case) is unsworn, and, even if it were sworn, the predicate for a finding of personal knowledge is absent.

- 6 -

IV

A

Plaintiffs next contest the validity of the arbitration agreement.  They argue that because Juan was computer illiterate, could not read or write English, and had little formal education in Spanish, the court cannot find that he agreed to the arbitration agreement.  Sears responds that Juan received notice of the arbitration agreement through a DVD that played in both English and Spanish, and by having Spanish translators available during the training sessions.  He demonstrated his assent, according to Sears, by logging-in to a Sears employee website with information known only to him and clicking a button indicating that he had viewed the DVD and received a hard copy of the Plan.  The court declines to reach this issue because plaintiffs' challenge to validity attacks the entire agreement, not the arbitration agreement specifically, and therefore is a question for the arbitrator to decide.[3]

---

[3]There is a difference between a challenge to contract *formation* (e.g., whether the plaintiff signed the contract or is bound by another's signature) and contract *validity* (e.g., fraud, duress, unconscionability).  *See Vallejo v. Garda CL Sw., Inc.*, ___ F.Supp.2d ___, 2013 WL 2417898, at *3, 5 (S.D. Tex. June 4, 2013).  "Challenges to the existence—as opposed to the enforceability or validity or scope—of an agreement to arbitrate, are for a court to decide."  *Id.* at *5 (citing *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011); *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 212 (5th Cir. 2003).  Illiteracy has generally been considered under the rubric of validity—specifically, unconscionability.  *See, e.g., In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App. 1999) (orig. proceeding); *Prevot v. Phillips Petroleum Co.*, 133 F.Supp.2d 937, 940-41 (S.D. Tex. 2001).  Although the Fifth Circuit has considered a party's assertion of illiteracy in the context of whether there was a meeting of the minds, *see American Heritage*, 321 F.3d at 538, the court nevertheless appeared to treat this as an issue of contract *validity* rather than contract *formation*.  *Id.* at 539 ("[T]here is sufficient evidence to indicate that the arbitration agreements may not have been valid under ordinary contract principles.  In particular, [defendant] may not have 'agreed' to the arbitration agreements[.]").

When "an issue . . . goes to the 'making' of the agreement to arbitrate[,] the federal court may proceed to adjudicate it.  But the statutory language [of the FAA] does not permit the federal court to consider claims [regarding the validity] of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404 (1967).  Although *Prima Paint* addressed a claim for fraudulent inducement that would invalidate the contract, the same reasoning applies to a claim that an agreement to arbitrate is unconscionable.  *See Rojas*, 87 F.3d at 749 (holding that "[b]ecause [plaintiff's] claim [of unconscionability] relates to the entire agreement, rather than just the arbitration clause, the FAA requires [the] claims be heard by an arbitrator").  Plaintiffs contend that, because Juan was illiterate in, and spoke little, English, and was computer illiterate, he could not have agreed to the arbitration agreement.  But the arbitration agreement in this case is contained within the 51-page Plan; it is not a stand-alone agreement.  *Cf. Am. Heritage*, 321 F.3d at 539 (deciding issue of validity where defendant "signed four identical arbitration agreements that were not contained in a clause of a larger contract, but instead existed as stand-alone agreements").  And when Juan electronically acknowledged that he had completed his Plan training, he was acknowledging that he had received training regarding the Plan and its requirements generally, which included the arbitration agreement.  Plaintiffs provide no evidence that Juan's illiteracy in English, limited English comprehension, or computer illiteracy invalidate

---

The parties did not brief this issue, but the procedure employed is fair because, as explained below, the court grants the motion on the alternative ground that, assuming *arguendo* that plaintiffs are specifically challenging the arbitration provision, the provision was not unconscionable.

the arbitration clause *specifically* rather than the Plan in its entirety.  *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992) (holding that claim of fraud related to contract as a whole where arbitration clause was part of larger agreement and facts alleged were relevant to agreements in their entirety), *abrogation on other grounds recognized by Brabbham v. A.G. Edwards & Sons Inc.,* 376 F.3d 377, 381 (5th Cir. 2004); *cf. Singh v. Choice Hotels Int'l, Inc.*, 2007 WL 2012432, at *3-4 (N.D. Tex. July 11, 2007) (Fitzwater, J.) (addressing unconscionability claim where plaintiff asserted provision was impermissibly beneficial to defendant and therefore substantively unconscionable).  Because plaintiffs' claim for unconscionability goes to the entire Plan—despite the fact that plaintiffs only desire to invalidate the arbitration clause—it is a decision for the arbitrator, not the court.  *See Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) ("[U]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute.").

## B

But assuming *arguendo* that plaintiffs' challenge goes to the arbitration agreement specifically, they have not shown unconscionability.  Illiteracy is generally insufficient to establish unconscionability because a person who signs a contract must be held to have known what words were used in the contract to have known their meaning.  *See Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 570 (Tex. App. 2004, no pet.).  Where illiteracy has given rise to unconscionability, not only has the signatory been illiterate, but other facts have indicated that he was not informed of the arbitration provision.  *See, e.g., Delfingen US-Tex.,*

*L.P. v. Valenzuela*, ___S.W.3d ___, 2013 WL 444927, at *8-10 (Tex. App. Feb. 6, 2013, no pet.) (finding arbitration agreement with employer procedurally unconscionable where employer knew employee was illiterate in, and did not understand, English, and yet failed to explain arbitration clause in Spanish, despite saying that it would explain the important parts of the paperwork); *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App. 1999) (orig. proceeding) (finding agreement procedurally unconscionable where one party was functionally illiterate, no one explained agreement to him, and person who gave him agreement to sign did not understand it); *Prevot v. Phillips Petroleum Co.*, 133 F.Supp.2d 937, 940-41 (S.D. Tex. 2001) (finding procedural unconscionability where plaintiffs did not speak English and agreement was not translated or explained to them); *see also Am. Heritage*, 321 F.3d at 537-39 (finding sufficient evidence for fraudulent inducement where defendant was illiterate, and his manager, who knew defendant was illiterate, explained documents defendant was signing but omitted explanations of, or misrepresented, the arbitration provisions).

Plaintiffs have not met their burden of showing that the arbitration provision is unconscionable. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The party contesting the contractual arbitration provision has the burden to show procedural unconscionability.") (citation omitted). Plaintiffs rely on Conce's affidavit stating that Juan could not read or write English, could not speak English well, and had limited education in Mexico. Conce does not aver that Juan was illiterate in Spanish. But assuming *arguendo* that he was, Sears's uncontested evidence shows that the Plan training DVD was

- 10 -

available in Spanish as well as in English, that there were Spanish interpreters available throughout training, and that he received the entire Plan document in Spanish. Plaintiffs also rely on Conce's statement that Juan was computer illiterate, arguing that he was confused and frightened by computers and therefore could not have accepted the terms of any electronic document, or at least another person would have had to have physically interacted with the computer on his behalf to do so. But Sears has produced evidence that, to have electronically acknowledged that he received the training, Juan would have had to have logged-in to the Sears employee system with personal information known only to him and affirmatively clicked a box acknowledging his training. There is no evidence that someone else took and used Juan's personal log-in information without his permission. The record evidence indicates that Juan, although illiterate in English, had access to Spanish versions of the Plan and accompanying training materials, including DVDs that did not require an ability to read English or Spanish, and had access to a Spanish interpreter. Accordingly, plaintiffs have not shown unconscionability.

* * *

For the reasons explained, the court grants Sears's motion to compel arbitration in accordance with the terms and conditions outlined in Article II, § 2.3 of the Plan.[4] This case

---

[4]Plaintiffs argue that compelling them to arbitrate before the American Arbitration Association would be fundamentally unfair because the organization favors employers. As support, they cite a paper written by a professor of labor relations that examines the outcomes of arbitration proceedings. "Following the Supreme Court's lead, [the court] 'decline[s] to indulge the presumption that parties in an arbitral body conducting a proceeding would be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" *Armstrong*

is stayed pending completion of arbitration.  The clerk of court is directed to close this case

statistically.  After the arbitration is concluded, a party may move the court to reopen the case

statistically for further proceedings provided for under the FAA.

**SO ORDERED.**

August 14, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

*v. Assocs. Int'l Holdings Corp.*, 242 Fed. Appx. 955, 959 (5th Cir. 2007) (per curiam) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (citation omitted)). Furthermore, "generalized attacks on arbitration are out of step with the federal policy favoring arbitration." *Id.* (internal quotation marks omitted).